UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOANN R. KOZAK,

Plaintiff,

v.

OFFICE DEPOT, INC.,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Civil No. 1:16-cv-00943

## PRELIMINARY STATEMENT

Plaintiff, Joann R. Kozak, brought this action against Defendant alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 US C §2000 e- et seq. alleging sex discrimination, the Age Discrimination in Employment Act of 1967, as amended, 29 USC §621 et seq. and Title I of the Americans with Disabilities Act of 1990, 42 USC §12 101, et seq., as amended. The gravamen of Ms. Kozak's claim is that Defendant created and permitted a hostile work environment on the basis of sex and age and discriminated against her on the basis of her sex, age, and disability. She further alleges that she was terminated and otherwise treated adversely because of her sex, age, disability and in retaliation for her complaints of discrimination (see Document 1).

On May 17, 2017, Plaintiff served Plaintiff's First Request for Production of Documents to Defendant (see Exhibit A). Defendant served its response on July 24, 2017 (see Exhibit B). Plaintiff, after reviewing Defendant's discovery responses, sent a five-page letter noting her objections to the incomplete responses incorporated into Defendant's response to Plaintiff's First Request for Production of Documents on November 8, 2017 (see Exhibit C).

Defendant, after receiving several extensions to respond to the letter, responded to Plaintiff's November 8, 2017 letter on December 8, 2017 (see Exhibit D). It did not provide any

additional documents with that letter, but waited to produce limited additional documents on December 18, 2017 January 5, 2018 and January 18, 2018.

Since the December 8, 2017 response of Defendant failed to address the heart of Plaintiff's objections, Plaintiff wrote to this Court on January 31, 2018 to request a conference to discuss the ongoing discovery disputes (See Exhibit E). In response to this request, the Court scheduled a conference for February 2, 2018. At that conference, the Court suggested that the parties continue to meet and confer and scheduled another conference for February 14, 2018, with a direction that the parties notify the Court by February 12, 2018 of the issues that the parties were unable to resolve (Document 26). The parties conferred in person immediately following the February 2, 2018 conference but Defendant continued to fail to address the heart of Plaintiff's objections. Plaintiff wrote to the court on February 12, 2018 to advise of the remaining issues (see Exhibit F) and Defendant wrote to the court as well (see Exhibit G). At the conference of February 14, 2018, the Court indicated that Plaintiff should file a motion to compel regarding the outstanding discovery disputes by March 9, 2018.

**ARGUMENT**

Rule 26(b)(1) of the Federal Rules of Civil Procedure, which was amended effective December 1, 2015, allows discovery regarding any matter, which is not privileged, that is relevant to any party's claims or defenses and proportional to the needs of the case. Proportionality will consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"The party seeking discovery to which it believes it is entitled may seek to compel production under Rule 37(a). The party resisting discovery bears the burden of specifically

demonstrating why the requested discovery—which for documents and things need only be described with "reasonable particularity" under Rule 34(b)(1)(A)—is objectionable. See *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y.1996). Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded. *Id.* (citing *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292 (E.D.Pa.1980)). Pat, generic, boilerplate, and non-specific objections will not suffice. *Obiajulu*, 166 F.R.D. at 295." *In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*, 277 F.R.D. 251, 254 (W.D.N.Y. 2011). With these principles in mind, Defendant should be compelled to produce the following:

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant has failed to provide complete responses to Paragraphs 1, 14, 15, 16, 18, 33, 45, 46, and 48 of Plaintiff's First Request for Production of Documents.

**Paragraph 1** requested "[t]he personnel file and/or any personnel document… including, but not limited to, office and personnel files, supervisory files, training files, performance files, Human Resources files, hiring records, performance evaluations, pay records, discipline records, work histories, training and experience records, transfer, promotion and/or demotion records, termination records, complaints regarding sexual harassment, complaints of any kind, investigation records, health records, requests for disability leave…" regarding a number of employees of Defendant.

Defendant produced the personnel files of only three of the requested employees: Plaintiff; Scott McGovern (the individual Plaintiff alleges harassed and discriminated against her); and Andrew Bland (the individual who replaced her after she was terminated by Defendant). It has refused to produce personnel documents of any other individual, relying upon the boilerplate objections that the request "is over broad and unduly burdensome and that it seeks

information or documents that are not relevant to any party's claim or defense and proportional to the needs of the case, including but not limited to disclosure of sensitive and confidential information of non-parties. The excess of documents sought in this request constitutes nothing more than a fishing expedition."

Courts have consistently ruled that personnel documents of similarly situated employees, supervisors of a plaintiff, and individuals involved in discriminatory behavior should be disclosed. *See, e.g. Barella v. Village of Freeport,* 296 F.R.D. 102, 106 (E.D.N.Y. 2013); *Ladson v. Ultra East Parking Corp.,* 164 F.R.D. 376 (S.D.N.Y. 1996). "Personnel files… are highly relevant to a plaintiff's claims in an employment discrimination case." *EEOC v. Beauty Enterprises, Inc*., Civil No. 3:01CV378, 2008WL3359252, *6, (D. Conn., August 8, 2008). In these types of cases, a plaintiff may show discrimination "by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group, or a comparator." *Metcalf v. Yale University*, No. 15-CV-1696, 2017 WL 627423,*3 (D. Conn., February 15, 2017).

The definition of what constitutes similarly situated employees tends to be based on fact specific circumstances. As a general proposition, however:

> A plaintiff is not obligated to show disparate treatment of an identically situated employee…. [W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). That case dealt with the definition of similarly situated in the context of a summary judgment motion. In a discovery context, "[a]n employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.' *Graham [v. Long*

*Island Rail Road]*, 230 F.3d [34 (2d Cir. 2000)] at 40 (citations omitted). 'Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated.' *Akinyemi v. Chertoff*, No. 07 Civ. 4048, 2008 WL 1849002, at *5 (S.D.N.Y. Apr. 25, 2008) (citations omitted)." *Sasikumar v. Brooklyn Hosp. Ctr*., No. 09 CV 5632 ENV RML, 2011 WL 1642585, at *2 (E.D.N.Y. May 2, 2011).

Personnel files of decision-makers and those who have participated in discriminatory conduct are also subject to discovery. *Dzanis v. JPMorgan Chase & Co*., No. 10 Civ. 3384, 2011 WL 597-9650,*4 (S.D.N.Y., November 30, 2011).

The individuals for whom Plaintiff seeks personnel records are, by and large, explicitly named in her Complaint as either similarly situated to Plaintiff, supervisors of Plaintiff, or individuals involved in the discriminatory behavior alleged by Plaintiff.

- Mary Bryan: human resources investigator that plaintiff alleges participated in the discriminatory conduct towards her; her personnel file is relevant with respect to complaints regarding other investigations into discrimination and failure to follow appropriate procedures, training, and experience;
- Thomas Shea: an older male who was Plaintiff's former District Manager; his personnel file is relevant regarding his training and experience and the reason for being replaced versus that of the alleged discriminator, Scott McGovern;
- Michael Szpylman: Assistant Manager of the store that Plaintiff managed, who was a witness to Plaintiff's discrimination and is a younger, male employee who was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 21 of Complaint);

- Carol Cannon: Operation Manager of the store that Plaintiff managed who was on disability and subjected to disability discrimination by Plaintiff's alleged discriminator, Scott McGovern (¶ 25 of Complaint);
- Dave Seaner: male Store Manager who was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 32 of the Complaint);
- Dave Newman: male Assistant Manager of the store that Plaintiff managed who was a witness to discrimination and in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 43 of Complaint);
- Scott Hahn: male Operation Manager who was a witness and was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶¶ 46-47 of Complaint);
- Jerome Hodges: younger male Assistant Manager who was permitted to attend manager training when Plaintiff was repeatedly denied the opportunity to attend such training who was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 15 of Complaint);
- Americo "Junior" Garcia: a younger male Store Manager who was permitted to attend manager training when Plaintiff was repeatedly denied the opportunity to attend such training and who was into the position of Store Manager by replacing an older Store Manager and who was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶¶ 33-34 of Complaint);
- Michael Bedford: an older Store Manager who was replaced by Mr. Garcia and ultimately terminated who would be comparable to Plaintiff and was similarly situated in so far

as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 34 of Complaint);

- Kenneth Thompson: a younger male Store Manager who was permitted to attend manager training when Plaintiff was repeatedly denied the opportunity to attend such training and who replaced an older Store Manager who would be similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶¶ 39-40 of Complaint);

- Eric Banach: an older Store Manager who was replaced by Mr. Thompson and was similarly situated to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 40 of Complaint);

- Jeffrey Gotham: a younger male Store Manager who was permitted to attend manager training when Plaintiff was repeatedly denied the opportunity to attend such training, who replaced an older Store Manager and who was similarly situated in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶¶ 42, 64 of Complaint);

- Kiki France-Perry: an older Store Manager who was replaced by a younger Store Manager, terminated, and would be comparable to Plaintiff in so far as she was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 61 of Complaint);

- Bradford Empfield: an older Store Manager who was replaced by a younger Store Manager, terminated, and would be comparable to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 62 of Complaint);

- Employee number 751008 (name unknown); an older Store Manager who was replaced by a younger Store Manager, terminated, and would be comparable to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 63 of Complaint);

- Robert Michalski: an older Store Manager who was replaced by a younger Store Manager who would be comparable to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 64 of Complaint);

- Jeffrey Kuczkowski: an older Store Manager who was replaced, terminated, and would be comparable to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 64 of Complaint);

- Christine Jones: a younger Store Manager who replaced an older Store Manager and was similarly situated to Plaintiff in so far as she was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 62 of Complaint);

- Jenna Lawson Swack: a younger Store Manager who replaced an older Store Manager and was similarly situated to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 61 of Complaint);

- Alex Belina: a younger, male Store Manager who replaced an older Store Manager and was similarly situated to Plaintiff in so far as he was subject to the same performance standards as Plaintiff and under the same supervision as Plaintiff (¶ 63 of Complaint).

All of these personnel files are relevant to demonstrate the training, experience, discipline history, and job performance between younger Store Managers and older Store Managers, including Plaintiff, all of whom were supervised by the same individual, Scott McGovern.

Furthermore, this request is proportional to the needs of this case. Rule 26(b)(1) states that proportionality will consider the importance of the issues at stake in the action, the amount

in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. The issues in this action, and the manner in which Plaintiff can prove intent, revolve around the disparate treatment of younger and older management employees, as well as male and female employees. Also, Congress has particularly indicated the importance of the issues involving discrimination given the passage of Title VII, the ADA, and the ADEA. The amount in controversy, i.e. Two Million Dollars, also warrants broad discovery. The parties' respective resources and their relative access to this information weighs heavily in favor of discovery of these personnel files. Plaintiff has no access to this information except through the personnel documents of these individuals and her resources, as a terminated employee now working in a lesser paying position, are dwarfed by Defendant's resources. Finally, the importance of this discovery cannot be overstated. "Because employers rarely leave a paper trail—or 'smoking gun'—attesting to a discriminatory intent, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464–65 (2d Cir.1989) (citing cases); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir.1988), disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990). The request for these personnel files is Plaintiff's reasonable efforts to build her case from the circumstantial evidence that she expects to find in these personnel files. Finally, while Defendant has claimed in generic, boilerplate terms that production of these personnel files is unduly burdensome, it has offered no specific reason why it would be unduly burdensome. This is an inadequate objection and should not be considered by the Court.

> [T]he defendant's contention that a given request is overly broad, not relevant, or unduly burdensome is uninformative and unsatisfactory. The defendant's *ipse dixit* recitation of boilerplate objections is thereby waived because such responses are improper.

> If the party from whom documents are requested objects to their production, that party has the burden to show why a discovery request is improper. (Citations omitted). That burden cannot be met by a reflexive invocation of the 'same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome,' or that it is 'not reasonably calculated to lead to the discovery of admissible evidence.' (Citation omitted)

*Kelley v. Board of Education of City of Chicago*, No. 10 C 7875, 2012 WL 1108135, *2 (N.D. Ill. April 2, 2012); see also, *American Rock Salt Company, LLC v. Norfolk Southern Corporation*, 228 F.R.D. 426 (W.D.N.Y. 2004); *Obiajulu v. City of Rochester, Department of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996).

**Paragraph 14** requested "all documents relating to the job title and age of anyone terminated by Defendant within District 217 (the district in which Plaintiff was employed) from January 1, 2012 through the conclusion of the action." Defendant has refused to produce any documents in response to this request, stating that it is "a fishing expedition" and asserting that the termination of an individual does not render that individual a relevant comparator.

Given that Plaintiff has explicitly alleged that older employees were replaced and terminated with younger employees by Defendant, this request is plainly relevant and is also appropriately limited in both time and geographic scope. See, e.g. *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42 (W.D.N.Y. 1986). Further, the Second Circuit Court of Appeals has ruled that an individual disparate treatment plaintiff may use statistical evidence regarding and employers practices to rebut its purported nondiscriminatory business reason. *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990). Thus its objection that this information may involve individuals who were not relevant comparators lacks legal support.

**Paragraph 15** requested "minutes, notes, agendas, and/or writings of any kind prepared for, taken at, written after, and/or associated in any way with District 217 Manager's conference

calls with Store Managers, including, but not limited to notes taken by Plaintiff, Scott McGovern, any District Manager of District 217 and/or any Store Manager within District 217 from January 1, 2012 through Plaintiff's conclusion of employment with Defendant." Defendant has refused to respond to this request, claiming that it is irrelevant, not proportional to the needs of the case, protected by the attorney-client privilege, work product doctrine, or any other (unspecified) privilege or immunity.

This request is relevant since Mr. McGovern conducted regular conference calls with the store managers that he supervised and he threatened Store Managers with impending termination (see ¶ 31 of Complaint) as well as announced promotions (see ¶ 33 of Complaint). In light of the allegations that Defendant, through Mr. McGovern, promoted younger, less qualified employees into the position of Store Manager while terminating older, more qualified employees from that same position, and he discussed these personnel decisions during these conference calls, minutes, notes, agendas and other writings would be relevant to demonstrate the rationale and pretext for these actions. Furthermore, since this request is for a discrete set of documents for a discrete period of time that is relevant to the issues in this action (i.e., the time Plaintiff became a Store Manager), it is both relevant and proportional. Finally, Defendant has offered no substantive basis for why documents related to conference calls between Mr. McGovern and store managers would have any privilege attached to it.

**Paragraph 16** requested "correspondence, memoranda, notes, cover letters, selection criteria, interview notes, resumes, and/or minutes, concerning Defendant's decision to transfer, hire, promote, refuse to hire, and/or refuse to promote any employee to the position; lay off and/or terminate any employee from the position; and/or retain any employee in the position in District 217 from January 1, 2011 through the conclusion of this action" with respect to the

positions of Assistant Store Manager and Store Manager. Defendant has refused to produce any documents in response to this request on the basis that she has "not alleged class claims, therefore, may seek discovery only with regard to her claims" and also on the basis that the decision to terminate any Store manager or Assistant Store Manager without any limitation is unduly burdensome and vague.

As noted above, the Second Circuit has explicitly rejected the argument that a plaintiff making a claim for disparate treatment may not seek broader discovery of a pattern and practice of discrimination. *Hollander, supra.* In light of the allegations that Defendant terminated and replaced a number of older management employees with younger management employees, documents reflecting those decisions are relevant since they would tend to demonstrate the reasons for those personnel decisions.

**Paragraph 18** requested documents reflecting requests to attend and the criteria for selecting employees to attend manager training. Defendant has produced limited documentation reflecting Store Manager College Attendance Criteria, Store Manager College Brochure, Store Manager Learning Guide, New Store Manager Training, and a list of attendees in 2015. It claims it has produced all relevant documents.

Plaintiff, however, specifically seeks the manner in which the criteria was applied to determine who was selected to attend these training sessions, who was not selected to attend these training sessions, and who attended these training sessions during the time period that she requested to attend these training sessions, i.e. from February 2013 through March 2015 (see ¶¶ 14, 27, 35-37 of Complaint). This issue is particularly relevant to the allegations of discrimination in this action since Plaintiff has specifically alleged that she was denied this training while other, younger employees were given this training. Therefore, documents

regarding the manner in which such selections were made, as well as the identity of the individuals sent, is relevant and proportional to the needs of this case. Defendants have produced no such documents.

**Paragraph 33** requested "documents regarding any training received by any Office Depot employees regarding age discrimination, disability discrimination, sexual harassment, retaliation, evaluations, discrimination, harassment, Performance Improvement Plans, Performance Correction Documents, disability leave, termination, investigations, business conduct, Store Manager training, and ethics including, but not limited to, the dates of training and the names of employees in attendance at each training." Defendant initially objected to this request, claiming that it was overly broad and sought information that was neither relevant nor proportional. Despite the objections, it produced training transcripts for six employees: Jerome Hodges, Andrew Bland, Americo Garcia, Kenneth Thomas, Jeffrey Gotham, and Scott McGovern. It has not produced any further documentation.

It should also be required to produce such training documents for Mary Bryan, the Human Resources Investigator involved in the investigation of Plaintiff's claims of discrimination and who ultimately determined that Plaintiff filed a false claim for which she was terminated. The training, if any, that she received into these issues is highly relevant to the claims in this action. *Banks v. General Motors, LLC*, 14CV970, 2017 WL 3172552, *5 (W.D.N.Y., July 26, 2017). Similarly, Defendant has not provided any training material on these issues that it claims to have provided to its employees. This material is as important, if not more important, than the training records of individual employees. The manner in which Defendant trained its employees with respect to discrimination, retaliation, disability, and ethics goes to the heart of Plaintiff's allegations against it.

Paragraphs 45-48 seek pay information for Assistant Store Managers, Store Managers, and District Managers in District 217, the district in which Plaintiff worked.

**Paragraph 45** requested "documents concerning any and all raises and/or bonuses given to any individual who held the position of Assistant Store Manager, Store Manager I, and/or Store Manager II in District 217 from January 1, 2010, to the conclusion of this action."

**Paragraph 46** requested "W-2 Statements, Form 1099, and other Internal Revenue Service forms for the period from January 1, 2012, to the conclusion of this action, for any individual, including the Plaintiff, who held the position of Assistant Store Manager, Store Manager I, and/or Store Manager II in District 217."

**Paragraph 47** requested "payroll records for any individual holding the position of Assistant Store Manager, Store Manager I, Store Manager II, and/or District Manager in District 217 from January 1, 2011, through the conclusion of this action."

Defendant produced W-2 statements and payroll records of Plaintiff, but no other documents evidencing raises, bonuses, W-2 statements, or payroll records of any other Assistant Store Manager, Store Manager, or District Manager for District 217. It has claimed that the request for any other pay records are overbroad, unduly burdensome, and not proportional to the issues in this action. It also claims that other Assistant Store Managers and Store Managers within District 217 are not similarly situated.

Defendants are obligated to produce earnings records of all similarly situated employees. *Bujnicki v. American Paving and Excavating*, No.99-CV-0646, 2004 WL 1071736, *9-10 (W.D.N.Y., Feb. 25, 2004). See also, *Banks v. General Motors, LLC*, 14CV970, 2017 WL 564014, *2, 6 (W.D.N.Y., February 13, 2017). These records are relevant because they would show the disparity, if any, between the wages, raises and bonuses between older management

employees and younger management employees, as well as between the female management employees and male management employees. Additionally, Plaintiff is unable to properly calculate her lost wage claim since she does not know the wages of Store Managers and District Managers since her termination. Finally, the earnings records of the District Managers for District 217 are relevant since this would be the next level job which Plaintiff could reasonably seek for a promotion. *Bujnicki, supra.*

**Paragraph 48** requested documents pertaining to "all claims of race discrimination, sex discrimination, disability discrimination, harassment, hostile work environment, and retaliation made by any employee of Defendants working within District 217 from January 1, 2002 through the conclusion of this action." Plaintiff withdrew her request for claims related to race discrimination, since no allegation of race discrimination has been made in this action, and also agreed to limit the time frame of her request to those claims from January 1, 2010. Defendant produced no document, limiting its response to January 2012 through the present and to Store Managers during the time frame of January 2014 through July 31, 2015.

No serious question should exist that other, similar complaints of discrimination are discoverable by a plaintiff in an employment discrimination action. See, *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69 (D. Conn. 2004); *Flanagan v. Travelers Insurance Co.*, 111 F.R.D. 42, 48 (W.D.N.Y. 1986); *Zahorik v. Cornell University*, 98 F.R.D. 27, 31 (N.D.N.Y. 1983). No basis exists to limit complaints of discrimination to a particular class of employees, such as Store Managers. In *Culkin*, the court granted plaintiff's motion to compel similar complaints of discrimination throughout the State of Connecticut, since evidence of patterns of discrimination by an employer "is clearly relevant in an individual disparate treatment case…" *Id.* at 71. Furthermore, in *Flanagan*, the Court permitted discovery for a four-year period of time prior to the plaintiff's termination. See also, *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D.Pa.

1979), permitting discovery for five years before liability period; *Cormier v. PPG Industries*, 452 F.Supp. 594 (W.D.La. 1978), permitting discovery for five year period before liability would attach. Since Plaintiff in this case began to experience in 2013, the temporal limitation of January 1, 2010 is reasonable.

Given the relevance of the discovery requests that Plaintiff has made, together with the restricted proportionality of the requests, Defendant should be compelled to produce these records.

**CONCLUSION**

For all of the above reasons, Plaintiff respectfully requests that this Court grant an order compelling Defendant to fully respond to Paragraphs 1, 14, 15, 16, 18, 33, 45, 46, 47 and 48 of Plaintiff's First Request for Production of Documents to Defendant, together with such other and further relief as the Court deems just and proper.

DATED: March 9, 2018
Buffalo, New York

*s/Duane D. Schoonmaker*
Duane D. Schoonmaker, Esq.
Josephine A. Greco, Esq.
Greco Trapp, PLLC
Attorneys for Plaintiff
1700 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Tel: (716) 856-5800
E-mail: dschoonmaker@grecolawyers.com

TO: Pamela S.C. Reynolds, Esq.
Jacqueline Phipps Polito, Esq.
LITTLER MENDELSON, P.C.
Attorneys for Defendant
375 Woodcliff Drive, 2nd Floor
Fairport, New York 14450
Tel: (585) 203-3400
E-mail: preynolds@littler.com
jpolito@littler.com